**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kenneth and Angela Hensley, on behalf of their minor child BLH, and All Others Similarly Situated, Respondents,

v.

South Carolina Department of Social Services, Appellant.

Appellate Case No. 2024-001598

───────────────

Appeal From Spartanburg County
J. Mark Hayes, II, Circuit Court Judge

───────────────

Unpublished Opinion No. 2026-UP-408
Heard April 7, 2026 – Filed August 12, 2026

───────────────

**REVERSED**

───────────────

Andrew F. Lindemann, of Lindemann Law Firm, P.A., and Joel Steve Hughes, of The Hughes Law Group, LLC, both of Columbia, all for Appellant.

Charles J. Hodge, of Hodge Law, PC; Timothy Ryan Langley and Matthew Thomas Foss, both of Langley Law Firm; and James Fletcher Thompson, of Thompson Dove Law Group LLC; all of Spartanburg, for Respondents.

———————————

**PER CURIAM:**  In this breach of contract class action, the South Carolina Department of Social Services (DSS) appeals the trial court's grant of partial summary judgment to Kenneth and Angela Hensley, on behalf of their minor child BLH and others (BLH), on DSS's exhaustion of administrative remedies defense. DSS also argues the trial court erred in finding BLH may pursue a breach of contract claim under a third-party beneficiary theory.  We reverse.

## FACTS/PROCEDURAL HISTORY

BLH filed this lawsuit in 2013 against DSS on behalf of a class of approximately 4000 similarly situated adopted children.  "The central allegation of the lawsuit is that DSS breached an Adoption Subsidy Agreement (Agreement) with the parents of each member of the class by reducing each parent's adoption subsidy (Subsidy) by $20 a month, beginning in 2002."  *Hensley v. S. C. Dep't of Soc. Servs.*, 429 S.C. 144, 146, 838 S.E.2d 510, 511 (2020).  In *Hensley*, the supreme court found DSS's appeal of the circuit court's order granting BLH's motion to certify the class was not immediately appealable.  *Id.*  The facts of this case were further set forth in *Hensley*:

> The Hensleys adopted BLH in 1999.  DSS then entered into an Adoption Subsidy Agreement with the Hensleys pursuant to 42 U.S.C.A. § 673(a)(1)(A), which requires the State to "enter into adoption assistance agreements . . . with the adoptive parents of children with special needs."  *See also* S.C. Code Ann. §§ 20-7-1900 to - 1970 (Supp. 2002) ("South Carolina Adoption Supplemental Benefits Act" (the Act) (currently codified at S.C. Code Ann. §§ 63-9-1700 to -1810 (2010)));  S.C. Code Ann. § 20-7-1950(A) (Supp. 2002) ("When the department determines that a child is eligible for supplemental benefits, a written agreement must be executed between the parents and the department." (currently codified at S.C. Code Ann. § 63-9-1770(A))).  The agreement— entered on a form prepared by DSS—required DSS to make a "monthly cash payment" to the Hensleys of $675. The agreement stated it was made "for the purpose of facilitating the legal adoption "of BLH" and to aid the

adoptive parents in providing proper care for this child."
By its terms, the contract was to be "renewed annually by
the adoptive parents and DSS," and the "parents may
appeal DSS's decision to reduce, change, or terminate
any adoption subsidy." In June 2002, the acting director
of DSS notified foster and adoptive parents by letter that
DSS would reduce all federally funded monthly foster
care maintenance and adoption subsidies by $20. In
2004, DSS restored the $20 for foster care maintenance
subsidies but not for adoption subsidies.

429 S.C. at 146–47, 838 S.E.2d at 511. The 2002 letter from the DSS director
(2002 Letter) stated:

We deeply regret to inform you that effective July 1,
2002, foster care board and adoption subsidy payments
will be reduced by $20 per month for each child, leaving
in place 83% of the increase that was received in 1999.
Please be assured that this action has not been taken
without much thought and consternation. I would not be
asking families to make this financial sacrifice if I did not
feel it was necessary in order to continue to provide
essential protective service and assistance to as many
children as possible. I ask that you bear with us during
this stressful time for our State and agency. I hope that
this reduction in foster care board and adoption subsidy
payments will be temporary and the rates can be
increased when the budget crisis has eased.

As stated above, DSS restored the foster care payments in 2004, but not the
Subsidy.

After the supreme court remanded the *Hensley* case to the trial court, the parties
filed cross motions for summary judgment. The trial court granted partial
summary judgment to BLH on its claim that they were not required to exhaust
administrative remedies before bringing the lawsuit, finding BLH established that
exhaustion was futile. The trial court stated it agreed with BLH's contention that
there was no requirement to pursue administrative remedies when "both the
contractual and statutory language is discretionary, and not mandatory," but then
stated it specifically was not determining whether the pursuit of administrative

remedies was "permissive."  The trial court quoted a portion of the 2002 letter and concluded, "whe[n] the highest placed person within an organization has announced a decision, and that decision is an across-the-board decision and is not unique or fact specific to the denied recipient, a reasonable person would consider an appeal to be vain or futile."  The trial court found DSS did not provide facts to defeat BLH's contention that the pursuit of administrative remedies was futile.  In a separate order, the trial court found no grounds to decertify the class of plaintiffs bringing the lawsuit against DSS.  This appeal followed.

**ISSUE ON APPEAL**[1]

Did the trial court err in granting partial summary judgment to BLH on DSS's exhaustion of administrative remedies defense?

**STANDARD OF REVIEW**

"Where cross motions for summary judgment are filed, the parties concede the issue before us should be decided as a matter of law."  *Buonaiuto v. Town of Hilton Head Island*, 440 S.C. 144, 150, 889 S.E.2d 625, 628–29 (Ct. App. 2023) (quoting *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011)).  "Questions of law may be decided with no particular deference to the trial court."  *Id.* at 150–51, 889 S.E.2d at 629 (quoting *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 654, 667 S.E.2d 7, 12 (Ct. App. 2008)).  "Furthermore, '[q]uestions of statutory interpretation are questions of law, which [this court is] free to decide without any deference to the court below.'"  *Id.* at 151, 889 S.E.2d at 629 (alterations in original) (quoting *CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

"When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the

---

[1] Because we reverse the grant of partial summary judgment to BLH on DSS's exhaustion of administrative remedies defense, we do not reach DSS's argument that the trial court erred in finding BLH may pursue a breach of contract claim under a third-party beneficiary theory.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an appellant's remaining issues when the determination of a prior issue was dispositive).

moving party is entitled to judgment as a matter of law." *Watson v. Underwood*, 407 S.C. 443, 453, 756 S.E.2d 155, 160–61 (Ct. App. 2014).

## LAW/ANALYSIS

### Exhaustion of Administrative Remedies

DSS argues the trial court erred in finding it would have been futile for BLH to challenge DSS's decision to reduce the monthly Subsidy because there was no evidence DSS's position was definitive. DSS also claims BLH was required under the Agreement and the Act to exhaust its administrative remedies. DSS further argues the trial court erred because BLH did not demonstrate that it would have been futile to challenge DSS's decision not to reinstate the Subsidy in 2004, when the foster care maintenance payments were increased. DSS reasons that BLH is claiming a breach of contract for the 2004 decision, and points to the class definition, which includes the adoptive children "who have had at least five months of lost benefits due to the cut in the assistance agreement after the date the foster care payments were reinstated in 2004." We agree.

"Whether administrative remedies must be exhausted is a matter within the [circuit court]'s sound discretion and [its] decision will not be disturbed on appeal absent an abuse thereof." *Holman v. S.C. Educ. Lottery Comm'n*, 441 S.C. 18, 29, 891 S.E.2d 701, 707 (Ct. App. 2023) (alterations in original) (quoting *Hyde v. S.C. Dep't of Mental Health*, 314 S.C. 207, 208, 442 S.E.2d 582, 582-83 (1994)). "An abuse of discretion occurs where the [circuit court] was controlled by an error of law or where [the circuit court's] order is based on factual conclusions that are without evidentiary support." *Id.* (alterations in original) (quoting *Stanton v. Town of Pawleys Island*, 309 S.C. 126, 128, 420 S.E.2d 502, 503 (1992)). Here, we conclude the trial court's order is controlled by an error of law and is also based on factual conclusions without evidentiary support.

In *Hensley*, the supreme court referred to DSS's current contention that each class member was required to appeal DSS's decision to reduce the subsidy through the administrative appeals process. 429 S.C. at 153, 838 S.E.2d at 515. The supreme court cited the South Carolina Adoption Supplemental Benefits Act as the statutory framework through which the parties entered into the Agreement. *Id.* The supreme court stated, "by its terms, the [Agreement] was to be 'renewed annually by the adoptive parents and DSS,' and the 'parents may appeal DSS's decision to reduce, change, or terminate any adoption subsidy.'" *Id.* at 147, 838 S.E.2d at 511.

"Relief is not generally available to one who has not exhausted administrative remedies." *Robinson v. S.C. Dep't of Emp. & Workforce*, 443 S.C. 63, 74, 902 S.E.2d 41, 47 (Ct. App. 2024) (quoting *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 319 S.C. 388, 390, 461 S.E.2d 819, 821 (1995)). "Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts." *Id.* (quoting *Hyde*, 314 S.C. at 208, 442 S.E.2d at 583). "[T]he doctrine of exhaustion of administrative remedies is generally considered a rule of policy, convenience and discretion, rather than one of law, and is not jurisdictional." *Id.* (alteration in original) (quoting *Cox v. S.C. Educ. Lottery Comm'n*, 441 S.C. 209, 218, 893 S.E.2d 342, 347 (Ct. App. 2023)).

> [An] exception to the requirement of exhaustion of administrative remedies exists when a party demonstrates that pursuit of them would be a vain or futile act. Futility, however, must be demonstrated by a showing comparable to the administrative agency taking a hard and fast position that makes an adverse ruling a certainty.

*Id.* at 75, 902 S.E.2d at 48 (alteration in original) (internal citations omitted).

Here, the trial court relied on the 2002 Letter as evidence of the futility of BLH's pursuit of administrative remedies. This was error. The 2002 Letter was not evidence of a definitive "hard and fast position" making an adverse ruling a certainty. Rather, the DSS director expressed hope that the subsidy reduction would be temporary. On its face, the 2002 Letter showed the restoration of the subsidy was possible in the future, making an appeal reasonable. The 2002 Letter also indicated that the concurrent decrease in foster care benefits could be readjusted in the future, which did indeed occur in 2004. Under the terms of the class certification, damages in this case began accruing in 2004, after DSS did not readjust the Subsidy when it readjusted foster care benefits. In their brief, BLH states they seek redress from 2004. In addition to the 2002 Letter being ambiguous as to finality and not supporting the trial court's conclusion, the record is devoid of evidence that shows it would have been futile for BLH to pursue administrative remedies in 2004. The only evidence in the record concerning BLH's failure to pursue administrative remedies is their statement they "did not elect to appeal to DSS because they were unsure of the process and believed that legal representation would be more expensive than the hoped for result." This shows BLH did not consider an appeal to be futile, but instead, they considered it expensive. *See Moore v. Sumter Cnty. Council*, 300 S.C. 270, 273, 387 S.E.2d 455, 458 (1990)

(noting South Carolina does not recognize "an exception to the requirement of exhaustion of administrative remedies in that one need not resort to an administrative remedy which is onerous or unduly expensive").  BLH has not shown that it would have been futile to appeal the subsidy reduction, and we hold the trial court erred in granting partial summary judgment to BLH on this issue. "A [circuit court] must have a sound basis for excusing the failure to exhaust administrative relief." *Robinson*, 443 S.C. at 74, 902 S.E.2d at 47 (alteration in original) (quoting *Hyde*, 314 S.C. at 209, 442 S.E.2d at 583); s*ee Smith v. S.C. Ret. Sys.*, 336 S.C. 505, 526-27, 520 S.E.2d 339, 350-51 (Ct. App. 1999) (holding a party's belief "even with good reason[ ] that [the agency would] reject her claim[ ] d[id] not establish futility as a basis for excusing exhaustion in the absence of a definitive statement by the agency administrator").

As to whether BLH was required under the Agreement and the Act to exhaust its administrative remedies, the Agreement states BLH "may" appeal a subsidy reduction.  BLH claims this language is permissive.  BLH distinguishes this case from *Robinson*, in which a statute stated the appeal framework was the "sole and exclusive appeal procedure." *Robinson*, 443 S.C. at 76, 902 S.E.2d at 48 (quoting S.C. Code Ann. § 41-35-690 (2021)).  Here, however, under section 63-9-1790 of the Act, "[a] decision concerning [subsidies] by [DSS] which the adoptive parents consider adverse to the child is reviewable according to department regulations." We do not construe this language as permissive, as it sets forth the process for an appeal.  Also, DSS regulations provide, "The family has the right to appeal any decision made by [DSS] . . . according to [DSS's] approved fair hearing appeal process." S.C. Code Ann. Reg. 114-4380(G)(1) (2012 & Supp. 2025).  South Carolina Reg. 114-110 describes the fair hearing process as allowing a party to "contest an adverse action taken by [DSS] and to have [their] objections . . . heard by an impartial hearing officer or committee." Reg. 114-120 explains the administrative process will "assure that an appeal of adverse action is resolved by prompt, definitive, and final administrative action." Reg. 114-130(M)(1) provides that the administrative decision is subject to "judicial review." The regulations state "[t]he family will be informed of its right to a judicial review in accordance with the Administrative Procedures Act."[2]  Reg. 114–4380(G)(2).  This regulatory

[2] BLH argues DSS did not give them notice of the foster care benefit increase in 2004 so they could not have known to appeal DSS's failure to increase the Subsidy. However, the Agreement merely states BLH could "request information from DSS" about an appeal and does not mandate that DSS notify BLH about foster care benefits.  Regardless, this argument was not raised to the trial court and is not preserved for our review.  An issue must be raised to and ruled on by the trial court

language is not permissive and constitutes the available "adequate administrative remedy" that BLH was required to pursue before seeking relief in the courts. *See Robinson*, 443 S.C. at 74, 902 S.E.2d at 47 ("Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts." (quoting *Hyde*, 314 S.C. at 208, 442 S.E.2d at 583)); *Moore*, 300 S.C. at 273, 387 S.E.2d at 457 (holding administrative remedies had not been exhausted under statute stating party "*may* apply for a variance" (emphasis added)).

Additionally, as the supreme court cited in *Hensley*, "exhaustion of administrative remedies . . . applies when a litigant invokes the original jurisdiction of the circuit court to adjudicate a claim based upon a statutory violation for which the legislature has provided an administrative remedy." 429 S.C. at 153, 838 S.E.2d at 515 (quoting *Stinney v. Sumter Sch. Dist. 17*, 391 S.C. 547, 550 n.1, 707 S.E.2d 397, 398 n.1 (2011)). *See Hyde*, 314 S.C. at 209, 442 S.E.2d at 583 ("We find the trial judge abused his discretion in finding as a matter of law that Hyde did not have to exhaust administrative remedies simply because the Whistleblower Statute does not expressly require it."). Here, BLH's breach of contract claim arises out of their allegation that DSS violated the Act by reducing the statutorily prescribed subsidy amount. The Act provides an administrative remedy for BLH to contest the Subsidy reduction which BLH was required to pursue. Therefore, the trial court erred as a matter of law in finding BLH was not required to exhaust administrative remedies. *See Robinson*, 443 S.C. at 74, 902 S.E.2d at 47 ("Declaratory relief will ordinarily be refused where another remedy will be more effective or appropriate under the circumstances." (quoting *Garris*, 319 S.C. at 390, 461 S.E.2d at 821)).

**REVERSED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

for an appellate court to review the issue. *See Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997).